Leonard **BACON** and Olympia Bacon, on their own behalf, and on behalf of their minor children, Plaintiffs,

v.

John O. **GRAHAM**, Commissioner of the Arizona Department of Public Welfare, et al., Defendants.

**No. Civ. 72–117 Phx. WPC.**

United States District Court,
D. Arizona.

Aug. 31, 1972.

Victor Aronow, Tempe, Ariz., for plaintiffs.

James Feeley, Michael Flam, Asst. Attys. Gen., Phoenix, Ariz., for defendants.

Before JERTBERG, Circuit Judge, and EAST and COPPLE, District Judges.*

* Honorable Gilbert H. Jertberg, Senior United States Circuit Judge for the Ninth Circuit, William G. East, Senior District Judge for the District of Oregon, and

## DECISION

EAST, Senior District Judge:

### SUMMARY OF PROCEEDINGS

The Plaintiffs, Leonard Bacon (Leonard) and Olympia Bacon (Olympia), husband and wife, on their own behalf and for their minor children, instituted these proceedings on March 6, 1972.

The Defendants are John O. Graham as Commissioner of Public Welfare; Arthur Van Haren, Glenn A. Jones, James J. Coughlin, Laura Almquist, Harold Musgrave, as Members of the Arizona State Board of Public Welfare (Department). The Department is charged under the statutes of the State of Arizona with the enforcement and execution of the Arizona laws and regulations of the Department pertaining to public welfare. The duly adopted Section 3–1207.3(F)(2) of the Department's Assistance Payments Manual (Regulation) provides, *inter alia:*

> "F. *Subpoena of Witnesses:* The Hearing Officer has the right to subpoena any witnesses the Department or the appellant petitions the Hearing Officer to order to be present at the hearings:
>
> .    .    .    .    .
>
> (2) It shall be the duty of the party moving for the issuance of subpoenas to prepare the subpoena and affidavit of service thereof, present it for signature to the hearing officer, tender the full amount of witness fees and mileage expense in accordance with A.R.S. § 12–203 and cause such process to be served."

The statute, Ariz.Rev.Stat.Ann. § 12–303 (Supp.1971–72), provides:

> "A.   A material witness attending the trial of a civil action shall be paid twelve dollars for each day's attendance to and including the time it was necessary for him to leave his residence and go to the place of trial and his discharge as a witness. The witness shall also be paid mileage at the rate of twenty cents for each mile actually and necessarily traveled . . . . ."

Leonard and Olympia seek declaratory and injunctive relief herein from Department's decision and order dated January 7, 1972, terminating certain relief grants and payments thereunder, with reimbursement demand, in favor of Leonard and Olympia, respectively, effective February, 1972.

They contend that as indigent recipients of the grants of relief, respectively, their United States Constitutional rights under the Due Process and Equal Protection Clauses were abridged by the Department's Chief Hearing Officer's implementation and enforcement of the Regulation which requires the tender of witness fees and allowances as a condition precedent to the issuance of subpoenas for appellants' witnesses.

██ We noted the jurisdiction of the three-judge District Court under 42 U.S.C. § 1983; 28 U.S.C. §§ 1343(3) and (4), 2201–2202, 2281 and 2284. The parties did not raise a contention under the doctrine of abstention and we noted that abstention herein was not proper. *Lake Carrier's Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

The Court having heard counsel orally took the cause under submission and from the written Stipulation of Facts and the records and files herein and being now advised enters the following:

### FINDINGS OF FACT

Leonard and Olympia have been and are now husband and wife and have minor children, all indigent persons and dependent children.

They were certified for an Aid to Dependent Children (A.D.C.) grant in the name of Olympia in September, 1968,

William P. Copple, United States District Judge for the District of Arizona, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated April 14, 1972.

and Leonard qualified and was certified for a General Assistance (G.A.) relief grant in July, 1970.

On July 7, 1971, Leonard was notified by the Maricopa County Welfare Department in two separate writings on forms of the Department: "Current medical information indicates you are now employable; therefore it is necessary to close your grant effective August, 1971," and "Since you have been found employable, and ineligible for a disability grant, it is also necessary to stop Aid to Dependent Children grant, effective August, 1971", respectively.

Each of the written notices contained statements under the head of

"Right to A Hearing"

with the advice, *inter alia,*

"To request a hearing you must sign and mail the green copy . . . . "

"Upon request for a hearing you will have the right to:

.    .    .    .    .

D. Present witnesses and evidence at the hearing and confront and cross-examine the Department's witnesses, . . . . "

The request for the hearing was duly made and a fair hearing date of September 15, 1971, was set, but continued until November 23, 1971, for additional medical information on Leonard's condition.

Pursuant to request of Leonard's counsel the Chief Hearing Officer provided a list of eight doctors who had examined Leonard and furnished medical reports upon which the Maricopa County Welfare Department had relied in making the determination of employability.

Counsel requested that these doctors be subpoenaed for attendance at the fair hearing for cross-examination of some and direct testimony from others.

The Chief Hearing Officer implemented the provisions of the Regulation requiring the tender of witness fees and mileage, which was beyond the financial ability of Leonard to pay, and none of the requested subpoenas were issued and neither did the Department subpoena the requested witnesses on Leonard's behalf.

Then followed certain legal action not now pertinent and the fair hearing was eventually held on December 30, 1971.

In the absence of subpoena power Leonard orally requested certain doctors whose reports were apparently adverse to his position and doctors whose reports were apparently favorable to his position to voluntarily appear at the hearing, but none did so appear.

Dr. C. G. Salisbury and Mr. Tom Watts, who were familiar with the medical documentary evidence in the Department's file, appeared as witnesses at the call of the Department and were orally examined and cross-examined on their knowledge of the reports and their opinion thereon.

Leonard's counsel made timely objection to the hearsay character of the reports adverse to Leonard's position and of the unavailability of the authors for cross-examination, and further to the conduct of the hearing in the absence of requested material witnesses upon the grounds that the regulation was unconstitutional.

On January 5, 1971, the Hearing Officer entered his Findings and Recommendations that Leonard's assistance be stopped and on January 7, 1971, the Department entered its order upholding the notices of July 7, 1971, and terminated the grants as aforesaid.

## DISCUSSION

The statute and its companions providing for the production of evidence and the attendance of private individuals as witnesses at judicial proceedings are a blend of state fiscal interests and constitutional due process requirements for the litigants and the protection of individuals from judicial servitude with allowance for fair compensation for their services. The statute on its face is apparently a valid exercise of state authority.

The pre-termination fair hearing procedure set up in the regulation is Ari-

zona's acknowledgment of the mandate of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), its legion of followers, and the prophecies of its heritage.

> "Such benefits [welfare payments] are a matter of statutory entitlement for persons qualified to receive them.[8]
>
> "8. It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity'."
>
> Their termination involves state action that adjudicates important rights."

*Id.* at 264, 90 S.Ct. at 1018.

> "[W]hen welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process."

*Id.* at 267, 268, 90 S.Ct. at 1020.

> " 'The fundamental requisite of due process of law is the opportunity to be heard.' . . . The hearing must be 'at a meaningful time and in a meaningful manner.' . . .
>
> [T]hese principles require that a recipient have . . . notice . . . and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."

*Id.* at 269, 90 S.Ct. at 1021 (citations omitted).

> "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses [upon whose evidence the adverse party relies]."

*Id.* at 269, 90 S.Ct. at 1021.

The regulation on its face is also apparently valid.

However, a good view of the factual picture of this cause manifestly reveals that the apparent pre-termination fair hearing provided for through the language of the regulation and the statute became a mockery. Leonard was deprived of witnesses although he made a request and showing for them. Leonard was robbed of any cross-examination of witnesses whose reports and statements were adverse to him and were relied upon by the Department in developing its order.

The "meaningful hearing" required by *Goldberg, supra,* and held out in the regulation became meaningless to Leonard, and all of this came about because he was indigent and unable to pay the tariff imposed upon justice by the state in furtherance of its fiscal interest.

> "We are thus left to evaluate the State's asserted interest in its fee and cost requirements as a mechanism of resource allocation or cost recoupment. Such a justification was offered and rejected in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)." [Boddie v. Connecticut, 401 U.S. 371, 382, 91 S.Ct. 780, 788, 28 L.Ed.2d 113 (1971).]

The judicial doom of tariffs like that imposed upon the use of the subpoena power by the regulation and statute was foreseeable under the full thrust of the constitutional principles of due process humanized with equal protection qualities as taught in *Griffin, supra,* and a reality with *Boddie, supra.*

While the rule of *Griffin* was developed in criminal proceedings, *Boddie* further developed and applied the rationale of *Griffin* to civil proceedings as well. Mr. Justice Brennan in his concurring opinion in *Boddie,* the civil divorce cause, teaches that

> "Courts [and it goes without saying quasi-judicial administrative hearings as well] are the central dispute-settling institutions in our society. They are bound to do equal justice under law, to rich and poor alike. . . . A State may not make its judicial processes available to some but deny them to others simply because they cannot pay a fee. . . . [The] fee requirement, as applied to an indigent, is a denial of equal protection." [401 U.S. at 388–389, 91 S.Ct. at 792.]

The unjust result to Leonard through the workings of the regulation and statute proves the rule "that a statute or a rule may be held constitution-

ally invalid *as applied* when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." Boddie v. Connecticut, *supra*, at 379, 91 S.Ct. at 787 (emphasis added).

The Supreme Court has often held that a valid statute was unconstitutionally applied to the circumstances of an individual, i. e., free speech and religious freedom, *id.* at 379, 91 S.Ct. 780 (dictum), "so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a [recipient's] opportunity to be heard." *Id.* at 380, 91 S.Ct. at 787.

■ We grant that the state has an important fiscal interest in charging a fee for various steps and stages throughout its judicial machinery and system. However, the United States Constitution demands a weighing of state interest and individual interest when they clash so as to foster and achieve equal justice in our land.

"When a State's interest in imposing a fee requirement on an indigent is compared to the indigent's interest in being heard, it is clear that the latter is the weightier. It is an unjustifiable denial of a hearing and therefore a denial of due process, to close the courts to an indigent on the grounds of nonpayment of a fee." [*Id.* at 387, 91 S.Ct. at 791 (Brennan, J., concurring).]

■ So we are taught that when statutory classifications affect fundamental rights, then in providing equal protection and treatment under law, if a state has available to it "less drastic means" to effect a statutory purpose, such alternative must be used. See Shapiro v. Thompson, 394 U.S. 618, 637, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969), and Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). We quote from Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed. 231 (1960):

"The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose."

See also Harlan, J., concurring in Williams v. Illinois, 399 U.S. 235, 259–266, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), in which inability to pay a fine was involved.

It is not our function, nor our prerogative to suggest, but that of the Arizona legislature to provide the Department with authority to prescribe the alternatives open to the indigent to receive during the course of the pretermination fair hearing the benefit of the state's subpoena power:

1) to obtain material witnesses and evidence,

2) to insure the right of cross-examination of adverse witness testimony or reports relied upon by the Department.

CONCLUSIONS OF LAW

From the foregoing we conclude that:

■ The requirement of the tender of witness fees and allowances as prescribed in the regulation and statute as applied to Leonard and Olympia (appellant indigent recipients) as a condition precedent to the issuance of subpoenas under the hand of the Hearing Officer for appellant's witness and to obtain cross-examination of authors of reports violates the Due Process and Equal Protection Clauses of the United States Constitution;

The fair hearing held by the Hearing Officer on Leonard's appeal is a nullity; and

The Findings and Recommendations of the Hearing Officer, dated January 5, 1972, and the Department order of January 7, 1972, terminating the G.A. and A.D.C. grants are each null and void.

Accordingly, the motion of the defendants for summary judgment herein should be denied and Leonard and Olympia are entitled to a decree herein:

1) Declaring the fair hearing proceedings, the Hearing Officer's Find-

ings and Recommendations and the Department's order aforesaid each null and void; and

2) Granting mandatory injunctive relief:

a) restraining the Department from the enforcement of the order of termination of January 7, 1972, and

b) reinstating the G.A. and A.D.C. grant's payment benefits effective August 1971, with setoff or accounting for all sums of temporary relief benefits paid to Leonard or Olympia, respectively, after termination of the mentioned grant payments, with leave to either party to apply herein for an accounting in the absence of mutual agreement.

No party shall recover costs herein.

This Decision shall stand as the Court's Findings of Fact and Conclusions of Law as provided for by Rule 52(a) Federal Rules of Civil Procedure.