[No. A054300. First Dist., Div. One. Jan. 29, 1993.]

J. DAVID NICK, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and
Respondents.

**COUNSEL**

Hancock, Rothert & Bunshoft, Paul J. Killion and Kathleen E. Justice for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Jose R. Guerrero and Kerry Weisel, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**STEIN, J.**—J. David Nick (Nick) appeals from a judgment dismissing a petition for writ of mandate directed against California Department of Motor Vehicles, A. A. Pierce, Director of the Department of Motor Vehicles, and the California Highway Patrol (hereafter respondents). Appellant contends he was denied a fair hearing on the suspension of his driver's license because he was unable, due to his indigence, to compel the attendance of the arresting officer. He further contends that the evidence does not support the conclusion that he had been driving with a blood-alcohol level of .08 percent or more. We reject both contentions and affirm the judgment.

I.

About 1:55 a.m., on November 14, 1990, Nick was arrested by Officer Gummert of the California Highway Patrol for driving under the influence of alcohol in violation of Vehicle Code section 23152. Officer Gummert based the arrest on personal observation of Nick's physical symptoms of intoxication and his performance of field sobriety tests. Approximately a half an hour later, appellant was given breath tests at the jail, which registered blood-alcohol levels of .09 and .08 percent. Pursuant to Vehicle Code sections 13353.2 and 23158.5, his driver's license was seized. He was served with an "order of suspension," given a temporary license and advised of his right to request a hearing. Nick demanded a formal administrative hearing on the suspension of his driver's license before the Department of Motor Vehicles (DMV) as provided for by Vehicle Code section 13558.

Prior to the administrative hearing, Nick obtained from the DMV a subpoena for Officer Gummert. The department's "order of suspension" advised appellant that he would be "responsible for service of your subpoenas and any witness fees required by statute." Nick attempted to serve the subpoena on the officer by delivering it to the California Highway Patrol (CHP) office. He was informed that they would not accept the subpoena without payment of a $150 witness fee. Claiming to be indigent and unable to pay the fee, Nick left the subpoena at the CHP office. It was later returned to him by mail. Thereafter, another attempt was made to serve the subpoena on Officer Gummert by delivery to the CHP office, but again without tender of the witness fee.

Two weeks before the hearing, which was held on December 27, 1990, the criminal charges against Nick arising from his arrest were dismissed.

At the administrative hearing the DMV relied on Officer Gummert's sworn arrest report submitted under Vehicle Code section 23158.2 and other

documentary evidence supporting the license suspension. Appearing without counsel, and as his only witness, Nick disputed Officer Gummert's written account of the circumstances of the arrest and the conduct of the field sobriety tests. He testified that at the jail, "they were having trouble with the [intoxilyzer] machine. They were banging the machine with a piece of stick to make it work. They had to use a mouthpiece that had been used by another person previously because they had run out of mouthpieces." The hearing officer upheld the suspension.

On January 30, 1991, Nick filed a petition for writ of mandate in the superior court seeking to order respondent DMV to reinstate his driver's license. Rejecting the petition, the court found that a "preponderance of the evidence supports the Department's determination that Petitioner was driving with a blood-alcohol level of .08 or above." After entry of judgment denying the petition, Nick filed this appeal.

## II.

 Appellant contends that respondents denied him a fair hearing by conditioning his right to confront and cross-examine Officer Gummert at the administrative hearing upon payment of a $150 witness fee.

Any "person, who has received a notice of an order of suspension . . . of the person's privilege to operate a motor vehicle pursuant to Section . . . 13353.2 . . . or 23158.5 . . . may request a hearing on the matter pursuant to Article 3 (commencing with Section 14100) of Chapter 3, . . ." (Veh. Code, § 13558, subd. (a).) All matters concerning the hearing which are "not covered by this chapter shall be governed, as far as applicable, by the provisions of the Government Code relating to administrative hearings, and particularly by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." (Veh. Code, § 14112.)

The procedure for serving a subpoena on a witness to compel his or her attendance at a DMV administrative hearing is set forth in Government Code section 11510.[1] That section provides, in pertinent part, that all subpoenas "shall be served in accordance with Sections 1987 and 1988 of the Code of Civil Procedure." (§ 11510, subd. (b).) Whenever a peace officer is subpoenaed to appear before any court or other tribunal in any civil action or proceeding concerning a matter he or she perceived or investigated in the course of his or her duties, Code of Civil Procedure section 1987 requires

---

[1]All further statutory references, unless otherwise noted, are to the Government Code.

compliance with sections 68097.1[2] and 68097.2.[3] Section 68097.2, subdivision (b) requires the party at whose request the subpoena is issued to reimburse the public entity for the expense to it of paying the officer's salary. "The amount of one hundred fifty dollars ($150), together with the subpoena, shall be tendered to the public entity for each day that the officer is required to remain in attendance pursuant to the subpoena." (*Ibid.*)

## III.

■ Appellant, relying on section 11510, subdivision (c), which provides, in pertinent part, that "[a]ll witnesses appearing pursuant to subpoena, other than the parties or officers or employees of the state . . . shall receive fees," argues that because Officer Gummert was an employee of the state he could be subpoenaed to this hearing without payment of fees.

The legislative purpose in enacting these sections was to correct the perceived evils of the prior system where peace officers only received normal witness fees when they testified:

"Prior to the enactment of Vehicle Code sections 2266 and 2267 in 1961 (repealed in 1963 and reenacted in substance as Government Code sections 68097.1 et seq.), the appearance of California Highway Patrol officers who testified in civil suits did so on their own time and received only ordinary witness fees. This arrangement was unsatisfactory. The numerous appearances in civil cases by California Highway Patrol officers caused serious administrative problems for which the Department was not compensated. The officers appearing in the civil cases either lost wages or were required to take vacation. Finally, and most unsatisfactory, was the persistent allegation that officers, because of the economic hardships in testifying, made private arrangements for their compensation with the party subpoenaing them and in return colored their testimony in favor of that party. In our opinion, Government Code sections 68097.1 et seq. were intended by the Legislature to remedy these problems alone; and it was not intended that officers should testify in civil cases as part of their official duty." (53 Ops.Cal.Atty.Gen. 322, 323 (1970).) This legislative plan, embodied in sections 68097.1-68097.8, places peace officers as witnesses in a special classification for

[2]Whenever a member of the CHP "is required as a witness before any court or other tribunal in any civil action or proceeding in connection with a matter regarding an event or transaction which he or she has perceived or investigated in the course of his or her duties, a subpoena requiring his or her attendance may be served by delivering a copy either to the person personally or by delivering two copies to his or her immediate superior . . . ." (§ 68097.1.)

[3]"Any peace officer . . . who is obliged by a subpoena issued pursuant to Section 68097.1 to attend as a witness, shall receive the salary or other compensation to which he or she is normally entitled from the public entity by which he or she is employed . . . ." (§ 68097.2, subd. (a).)

compensation and makes it a crime (§ 68097.7) for them to accept compensation in any other way. (See *Patterson* v. *Sharp* (1967) 253 Cal.App.2d 838, 840-841 [61 Cal.Rptr. 517].) Where the employing governmental entity is a party to proceedings based on the actions of its peace officer employees, the provisions of section 68097.2 do not apply. (253 Cal.App.2d at p. 841.) However, in order to effectuate the legislative scheme, and notwithstanding the provisions of section 11510, subdivision (c), when the CHP is not a party to the proceedings the party who subpoenas a CHP officer to testify about a matter which he or she investigated in the course of his or her duties is required to pay the fees specified in section 68097.2.

## IV.

In 1965 section 68097.1 was amended to define the term "tribunal," as used in that section and in section 68097.2, to mean "any person or body before whom or which attendance of witnesses may be required by subpoena, including an arbitrator in arbitration proceedings." Appellant contends that this amendment prohibits the application of these sections to DMV license suspension hearings.[4]

We must give effect to the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].) In determining such intent, we must turn first to the words themselves, giving them their ordinary and generally accepted meaning. (*People* v. *Craft* (1986) 41 Cal.3d 554, 559-560 [224 Cal.Rptr. 626, 715 P.2d 585].) The words must be read in light of the legislative objective sought to be achieved, as well as the evil sought to be averted. (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].)

The person before whom a DMV license suspension hearing is held may compel the attendance of witnesses by subpoena. (§ 11510.) Appellant has not demonstrated why the language, "including an arbitrator in arbitration proceedings," should be read to exclude DMV license suspension hearings from the operation of sections 68097.1 and 68097.2. Moreover, appellant's interpretation would violate the legislative intent of those sections and lead to absurd results.

---

[4]Initially, we note that section 11510, subdivision (c), which requires payment of witness fees and mileage "in the same amount and under the same circumstances as prescribed by law for witnesses in civil actions in a superior court," for attendance at these hearings, has remained unchanged since its enactment some 20 years before section 68097.1 was amended in 1965. Thus, payment of these fees would be required under section 11510, subdivision (c), regardless of whether DMV license suspension hearings are held before a "tribunal" as defined in section 68097.1. (Veh. Code, § 14112.)

Section 68097.1 allows service of process on a peace officer by delivery to his supervisor. If appellant is correct, and section 68097.1 does not apply, then he has failed to properly serve this subpoena as required by Code of Civil Procedure section 1987 and may not now complain of Officer Gummert's failure to attend the hearing. (*People* v. *Du Bose* (1970) 10 Cal.App.3d 544, 549 [89 Cal.Rptr. 134].) We can discern no reason why the Legislature would allow substitute service on peace officers whenever they are required to appear as witnesses, except if subpoenaed to a DMV license suspension hearing. Section 68097.2 shifts the salary and travel expenses of peace officers while they are testifying from their employing public agency to the party who has subpoenaed their attendance. Again, we can discern no reason why the Legislature would require reimbursement to the public for the expenses of peace officers whenever they are required to appear as witnesses, except if subpoenaed to a DMV license suspension hearing.

Appellant properly attempted service on Officer Gummert by leaving copies of the subpoena at the CHP office (§ 68097.1) and the CHP properly refused to accept appellant's tender of the subpoena absent payment of the required fees (§ 68097.2). (See *Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1376 [240 Cal.Rptr. 281]; *Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 110 [177 Cal.Rptr. 175].)

V.

While no court has directly confronted the issue of whether due process requires that witness fees be waived for an indigent, some have assumed that the licensee is required to pay the costs of serving these subpoenas. (See *Snelgrove* v. *Department of Motor Vehicles*, *supra*, 194 Cal.App.3d at pp. 1376-1377; *Burkhart* v. *Department of Motor Vehicles*, *supra*, 124 Cal.App.3d at p. 110.) ▇▇ With regard to the analogous right to be represented by counsel at license suspension hearings, due process does not require the appointment of counsel for an indigent licensee. (*Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 543 [92 Cal.Rptr. 525].) "The constitutional right to counsel provided for in the California Constitution (art. I. § 13) and the federal Constitution (Amend. VI) is guaranteed specifically in *criminal prosecutions*. The guaranty does not, by virtue of the specific language of these provisions, apply to civil proceedings. Administrative proceedings are civil in nature. With particular reference to a proceeding to revoke or suspend a license or other administrative action of a disciplinary nature, it has been held in this state that such proceeding is not a criminal or quasi-criminal prosecution." (*Borror* v. *Department of Investment*, *supra*, 15 Cal.App.3d at pp. 539-540.)

▇▇ When the Legislature enacted both penal (Veh. Code, § 23152 et seq.) and administrative (Veh. Code, § 13352) sanctions for driving under

the influence, it contemplated two processes. One involves court proceedings and is criminal in nature, the other involves administrative proceedings and is civil in nature. The administrative per se suspension of driving privileges "is a civil matter which is independent of the determination of the person's guilt or innocence . . . in the criminal proceeding." (Veh. Code, § 13353.2, subd. (e).)

■ The privilege to drive a motor vehicle on the public highways is important, but not fundamental. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 80-84 [177 Cal.Rptr. 566, 634 P.2d 917]; *McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1021 [140 Cal.Rptr. 168].) Driving is a highly regulated activity subject to numerous government-mandated fees and expenses. A fee is required to apply for, renew or change the name on a driver's license. (Veh. Code, §§ 14900.1, 14901.1.) Every driver in this state is required to be financially responsible. (Veh. Code, § 16020.) Appellant will be required to pay a fee of $100 to reinstate his driver's license because it was suspended under the provisions of Vehicle Code section 13353.2. (Veh. Code, § 14905.) Appellant also will be required to file proof of financial responsibility before his driving privilege can be reinstated. If the privilege to drive were a fundamental right, as appellant's argument suggests, then the state could not burden it with these other fees and financial requirements.

The suspension of a driver's license may affect a substantial private interest and "cause personal inconvenience and possible economic hardship. But however substantial such a property interest may be, it is no more substantial than the right to pretrial freedom in criminal cases because of the presumption of innocence. [¶] *Gerstein* v. *Pugh* (1975) 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854] examined Florida's criminal procedures which resulted in pretrial restraint of liberty simply upon the filing of a prosecutor's information without preliminary hearing and without leave of court. The high court held the procedure unconstitutional and held that a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention. However, it also held that a full adversary hearing was not required. The determination of probable cause need not be accompanied by the full panoply of adversary safeguards— counsel, confrontation, cross-examination, and compulsory process for witnesses. Since the sole issue is probable cause for detention, the issue may be determined without an adversary hearing." (*Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d at pp. 108-109.)

■ At appellant's request the Department of Motor Vehicles issued a subpoena for the attendance of Officer Gummert, who refused to obey the

subpoena absent the tender of the fees required by section 68907.2. Neither the DMV nor the CHP has the authority to waive the required fees. Only a court can determine if appellant is truly indigent, and only appellant can establish his claim of indigence. Appellant had at least two methods by which he could have presented his claim to the courts before the administrative hearing was held. Appellant could have petitioned the court to be relieved of the duty to deposit these fees because of his indigence. (§ 68097.55.)[5] Appellant could have asked the DMV to enforce the subpoena and, when the DMV refused, he could have petitioned the superior court to compel the agency to perform its mandatory duty. (*Gilbert* v. *Superior Court* (1987) 193 Cal.App.3d 161, 167 [238 Cal.Rptr. 220].)

Rather than attempt either to have the fees waived or the subpoena enforced, appellant merely objected at the conclusion of the hearing, claiming a denial of due process resulted from the officer's absence. Even where the right to compel the attendance of witnesses is constitutionally protected, appellant's actions would not amount to a sufficient showing of due diligence to support a claim that the failure of a witness to attend denied him a fair hearing. "Due diligence requires application be made to the court invoking its aid to secure such witnesses long before trial and certainly at a time which would not require an extended interruption of a trial, then almost completed. A defendant may not complain of the absence of a witness unless he had made a showing of due diligence to obtain the attendance of the witness." (*People* v. *Du Bose, supra,* 10 Cal.App.3d at p. 549.)

## VI.

Appellant also contends that the trial court erred in concluding that the finding that the determination that he had been driving with a blood-alcohol level of .08 percent or above was supported by a preponderance of the evidence. The report of the arresting officer declared that appellant had been stopped after he signaled right and turned left, made a wide right turn onto another street and drove along the street "to the left of the solid, painted double yellow lines." The officer noticed the odor of alcohol on appellant's breath, and "observed his eyes to be red, watered and glassy, and his speech was slurred." Appellant did not perform well on the field sobriety tests; when he was asked to stand on one foot, he used his arms and hands to balance and used an "improper counting sequence." He could not coordinate moving his finger to thumb with a counting sequence. The field breath testing unit indicated that appellant had a blood-alcohol level of roughly

---

[5] As noted above, with respect to the service of subpoenas, the Administrative Procedure Act incorporates the provisions of sections 68097.1 to 68097.8 through Code of Civil Procedure section 1987, subdivision (a). (§ 11510.)

.078 percent. Appellant was given a formal test on an intoxilyzer approximately one-half hour after he was arrested. A first test reported that he had a blood-alcohol level of .09 percent. ██ ██ ██ A second test reported a level of .08 percent.[6]

██ Appellant argues that the test results could not be used as evidence "[w]ithout the aid of expert testimony or a statutory presumption." Vehicle Code section 23152, subdivision (b), however, contains the requisite statutory presumption. Subdivision (b) sets forth the rebuttable presumption as to "any prosecution under this subdivision" that "the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after driving."

Appellant argues that the subdivision may not be construed as establishing a presumption for any proceeding other than prosecution under section 23152. We recently held to the contrary. (*Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 391 [7 Cal.Rptr.2d 5]; and see *Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 310-314 [13 Cal.Rptr 2d 830].)

██ Appellant argues that there was no evidence rebutting his own testimony that the intoxilyzer was malfunctioning and the test was performed improperly. The testing officer's checklist, however, was admitted and is evidence that the test was properly performed as to the matters checked off. In addition, the Code of Regulations details the procedures for performing these tests (tit. 17, arts. 5-7), and Evidence Code section 664 states the presumption that "official duty has been regularly performed." It follows that there was evidence contradicting Nick's testimony. The trial court was entitled to accept this evidence and reject Nick's. (*McDonald* v. *Hewlett* (1951) 102 Cal.App.2d 680, 688 [228 P.2d 83, 24 A.L.R.2d 1281];

---

[6]Appellant incorrectly claims that the second and third tests, respectively, reported blood-alcohol levels of .08 and .09 percent. He argues that these results, together with the field sobriety test, indicate that his blood-alcohol level was rising. The field sobriety test, of course, is used not to establish blood-alcohol levels for purposes of Vehicle Code section 13353.2, but to aid the police in determining if cause exists to arrest an individual. Furthermore, these tests are not performed on equipment licensed for the purpose of establishing blood-alcohol levels and, accordingly, there is no foundation for admitting the results. (See *Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 816 [3 Cal.Rptr.2d 478].) The results of the first test, therefore, are not evidence that appellant's blood-alcohol level was ever lower than .08 percent. The second and third tests are admissible, but to the extent that the varying results indicate anything—other than that the equipment was accurate to within plus or minus .01 percent of actual blood-alcohol level (see Cal. Code Regs., tit. 17, § 1221.4, subd. (a)(2)(A))—they indicate that Nick's blood-alcohol level was *falling*.

*Lane* v. *Whitaker* (1942) 50 Cal.App.2d 327, 330 [123 P.2d 53].) We see no error in the trial court's determination that Nick had indeed been driving with a blood-alcohol level of .08 percent or over.

CONCLUSION

We hold that appellant received a full and fair administrative hearing and that the evidence supports the conclusion that appellant drove with a blood-alcohol level of .08 percent or more. The judgment of the trial court dismissing appellant's petition for a writ of mandate is affirmed. Each party will bear its own costs on appeal.

Dossee, J., concurred.

**NEWSOM, Acting, P. J.**—I respectfully dissent. In my view respondents violated appellant's statutory and constitutional right to cross-examine adversary witnesses at the administrative hearing by demanding payment of a $150 witness fee without valid statutory authorization.

In analyzing the statutory right of cross-examination, one necessarily moves through turgid and murky waters. I begin with Vehicle Code section 13558, which provides that a "person, who has received a notice of an order of suspension . . . of the person's privilege to operate a motor vehicle pursuant to Section . . . 13353.2 . . . or 23158.5 . . . may request a hearing on the matter pursuant to Article 3 (commencing with Section 14100) of Chapter 3, . . ." Section 14112 of chapter 3 of the Vehicle Code provides that all matters concerning the hearing which are "not covered by this chapter shall be governed, as far as applicable, by the provisions of the Government Code relating to administrative hearings, and particularly by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." The referenced chapter 5 of part 1, division 3, title 2 of the Government Code deals generally with administrative adjudication and contains two statutory guarantees of the right of cross-examination. Government Code section 11500, subdivision (f)(2), provides that "the procedures governing" an adjudicatory hearing shall include "[t]he right to cross-examination and to confront adversary witnesses." Government Code section 11513, subdivision (b), further provides: "Each party shall have these rights: . . . to cross-examine opposing witnesses on any matter relevant to the issues . . . ."

The issue of witness fees for the attendance of a California Highway Patrol officer at the hearing turns on the possible application of two statutes. Government Code section 11510, subdivision (c), which appears in the above mentioned chapter 5, part 1, division 3, title 2 of the Government

Code, provides: "All witnesses appearing pursuant to subpoena, *other than the parties or officers or employees of the state* or any political subdivision thereof, shall receive fees . . . ." (Italics added.)

The general provisions of the Government Code, however, contain two related statutes, specifically referring to the California Highway Patrol, which require payment of a $150 witness fee in an applicable proceeding. Government Code section 68097.1 provides: "Whenever an employee of the Department of Justice who is a . . . member of the California Highway Patrol . . . is required as a witness before any court or other tribunal in any civil action or proceeding in connection with a matter regarding an event or transaction which he or she has perceived or investigated in the course of his or her duties, a subpoena requiring his or her attendance may be served . . . ." Government Code section 68097.2, subdivision (b), sets forth the requirement of the witness fee: "The amount of one hundred fifty dollars ($150), together with the subpoena, shall be tendered to the public entity for each day that the officer is required to remain in attendance pursuant to the subpoena."

Respondents rely on the familiar principle that " '. . . when a special and a general statute are in conflict, the former controls. . . .' " (*Stemler* v. *Workers' Comp. Appeals Bd.* (1988) 204 Cal.App.3d 577, 582 [251 Cal.Rptr. 364].) Under this principle, Government Code sections 68097.1 and 68097.2 would undoubtedly prevail over Government Code section 11510, subdivision (c), if both statutes applied by their terms to the case. I conclude, however, that Government Code section 68097.1 does not apply to an administrative hearing before the Department of Motor Vehicles pursuant to Vehicle Code section 13558 to review the suspension of a driver's license.[1]

The two statutes form part of a statutory scheme, encompassed by Government Code sections 68097.1 through 68097.10, which has its origin in former Vehicle Code sections 2266 and 2267 enacted in 1961. (Stats. 1961, ch. 2051, pp. 4275-4276.) Vehicle Code former section 2266 applied, albeit somewhat ambiguously, to "[a]ny member of the California Highway Patrol who is obliged by a subpoena to attend as a witness before any court in any civil action or proceeding as to a matter relating to the performance of his powers or duties under this code . . . ." In such cases, it provided that the officer was entitled to receive his or her full salary for the period of

---

[1] My colleagues point out that Government Code section 11510, subdivision (b), indirectly cross-references Government Code section 68097.1 to Government Code section 68097.8 by referring to Code of Civil Procedure section 1987 which in turn refers to these sections, but I see no relevance in this cross-reference to the question at issue on this appeal, which is the intended scope of Government Code section 68097.2.

attendance, plus "actual, necessary and reasonable traveling expenses." The party requesting the subpoena was obliged to reimburse the state for the amount of these costs. The statute in fact required the party to deposit with the court "[a]n amount equal to the estimated amount of such salary or other compensation and expenses," before a subpoena could be issued.

In 1963 the Legislature refined and elaborated this scheme by repealing Vehicle Code sections 2266 and 2267 and enacting Government Code sections 68097.1 through 68097.8. (Stats. 1963, ch. 1485, pp. 3049-3052.) Government Code section 68097.1 referred more precisely to cases where a member of the California Highway Patrol "is required as a witness before any court . . . in any civil action or proceeding in connection with a matter regarding an event or transaction which he or she has perceived or investigated in the course of his or her duties, . . ." If the proceedings took place within 150 miles of the officer's residence, the party requesting the subpoena was required to pay a standard, liquidated amount of $25 per day; in other cases, the former procedure continued to apply. Significantly, the 1963 legislation added Government Code section 68097.7 which punished as a misdemeanor the act of paying or offering "to pay any money or other form of consideration for the services of any member" of the California Highway Patrol to testify "in connection with a matter regarding an event or transaction which he has perceived or investigated in the course of his duties . . . ."

This statutory scheme (which has subsequently been amended in many ways not material here) reflects the legislative intent of requiring civil litigants to pay the cost of subpoenaing an officer of the California Highway Patrol to appear as witness in litigation arising from an accident or other event that the officer had investigated. The standard fee was apparently added as a matter of administrative convenience to avoid the awkward task of estimating the cost of attendance.

The statute plainly concerned only attendance at proceedings which were not related to the performance of an officer's duties in law enforcement. The language referring to "an event or transaction which he has perceived or investigated" represents a careful attempt to describe such proceedings. Two other provisions make this intent still more clear. First, since the officer is obviously entitled to compensation in discharging official duties, there was a need to affirm the officer's right to receive his or her salary and reimbursement of traveling expenses only where the officer was concerned with matters outside the scope of these duties. Secondly, Government Code section 68097.7 which prohibits the payment of compensation for an officer's testimony, served a reasonable legislative purpose only in cases where the officer acted outside the scope of official duties. In such cases, civil

litigants might consider paying an officer to appear as an expert witness or in similar capacity; the statute forbids this practice. But where the officer appears as a witness in a proceeding related to law enforcement, the payment of money for his or her appearances would either constitute bribery—a felony offense punished elsewhere—or would presumably be contrary to the interests of a private party.

As explained in Attorney General Opinion 70-66, "[p]rior to the enactment of Vehicle Code sections 2266 and 2267 in 1961 (repealed in 1963 and reenacted in substance as Government Code sections 68097.1 et seq.), the appearance of California Highway Patrol officers who testified in civil suits did so on their own time and received only ordinary witness fees. This arrangement was unsatisfactory. The numerous appearances in civil cases by California Highway Patrol officers caused serious administrative problems for which the Department was not compensated. The officers appearing in the civil cases either lost wages or were required to take vacation. Finally, and most unsatisfactory, was the persistent allegation that officers, because of the economic hardships in testifying, made private arrangements for their compensation with the party subpoenaing them and in return colored their testimony in favor of that party. In our opinion, Government Code sections 68097.1 et seq. were intended by the Legislature to remedy these problems alone . . . ." (53 Ops.Cal.Atty.Gen. 323 (1970).)

This legislative purpose is consistent with a 1965 amendment to Government Code section 68097.1 which added the phrase "or other tribunal" following the word "court" and defined the term "tribunal" as follows: "As used in this section and in Sections 68097.2 and 68097.5, 'tribunal' means any person or body before whom or which attendance of witnesses may be required by subpoena, including an arbitrator in arbitration proceedings." This definition is no doubt broad enough to include an administrative hearing before the Department of Motor Vehicles (see Veh. Code, § 14104.5), but the legislative history reveals that the amendment was intended only to include arbitration proceedings within the statute. In a letter to the Governor, the author, Assemblyman Howard Thelin, explained, "The purpose of my bill AB 456 is to amend the existing law so as to make it clear that the statute does apply to arbitration proceedings as well as court hearings." The amendment was clearly not intended to affect the meaning of the phrase at issue in this appeal—"civil action or proceeding."[2]

The California Highway Patrol, which was formerly known as the Division of Enforcement of the Department of Motor Vehicles, has direct

---

[2]My colleagues argue, "Appellant has not demonstrated why the language, 'including an arbitrator in arbitration proceedings,' should be read to exclude DMV license suspension hearings from the operation of sections 68097.1 and 68097.2." (Maj. opn., *ante*, p. 1414.) Appellant has never suggested, however, that the language has this effect. He relies rather on

responsibility for the enforcement of the Vehicle Code. (Veh. Code, § 2103.) The administrative suspension of a driver's license, incident to an arrest for driving under the influence of alcohol, comes within this responsibility since it is a sanction intended to punish violation of Vehicle Code section 23152. A hearing pursuant to Vehicle Code section 13558 has the same purpose since it serves to review the initial administrative suspension. By appearing at such a hearing, an officer of the California Highway Patrol thus makes him or herself available for testimony with regard to the propriety of a sanction imposed for violation of the Vehicle Code. Since it involves a determination related to enforcement of the Vehicle Code, the officer's attendance at the hearing concerns an action within his or her official duties and does not entail any of the problems that Government Code section 68097.1 et seq. was intended to address, that is, the expense and inconvenience of an officer appearing in civil litigation at the behest of private litigants.

My interpretation is further supported by consideration of constitutional problems that would sometimes result from requiring the witness fee at issue in proceedings of this kind. " '. . . [A] court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.' " (*Young* v. *Haines* (1986) 41 Cal.3d 883, 898 [226 Cal.Rptr. 547, 718 P.2d 909]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669].) Though beyond constitutional challenge in its normal application, the witness fee would violate due process as applied to indigents by impermissibly burdening the right of confrontation and cross-examination.

Despite my respected colleagues' apparent suggestion to the contrary, it is very well established that civil proceedings brought by the state to suspend a driver's license must comport with procedural due process. (*Rios* v. *Cozens* (1972) 7 Cal.3d 792, 795 [103 Cal.Rptr. 299, 499 P.2d 979].) In *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586], the United States Supreme Court explained, "Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."

In the field of administrative law, the precise requirements of due process will vary according to the nature of the governmental action. *Mathews* v.

the limited scope of the term "civil action or proceeding" and contends only that the 1965 amendment did not serve to change the meaning of this phrase.

*Eldridge* (1976) 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893], offers a widely applicable method of analysis: "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (See *Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723]; *Mackey* v. *Montrym* (1979) 443 U.S. 1 [61 L.Ed.2d 321, 99 S.Ct. 2612].)

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 269 [25 L.Ed.2d 287, 300, 90 S.Ct. 1011].) Thus, " '[t]he right to cross-examine witnesses in quasi-judicial administrative proceedings is considered as fundamental an element of due process as it is in court trials.' " (*McLeod* v. *Board of Pension Commissioners* (1970) 14 Cal.App.3d 23, 28 [94 Cal.Rptr. 58]; *Fremont Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 965, 971 [200 Cal.Rptr. 762].)

Affirming the importance of the right to cross-examination, four California decisions clearly view the right to subpoena the arresting officer for cross-examination as an essential element of due process in license suspension hearings. (*Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99 [177 Cal.Rptr. 175]; *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44 [181 Cal.Rptr. 613]; *Hughes* v. *Alexis* (1985) 170 Cal.App.3d 800 [216 Cal.Rptr. 550]; *Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364 [240 Cal.Rptr. 281].) The decisions deal with reliance on the arresting officer's sworn report, in the officer's absence, as the basis for upholding the administrative suspension of the licensee's driver's license. In each case, the officer unexpectedly failed to appear at the hearing. The due process issue thus concerned both the use of hearsay testimony shielded from cross-examination and interference with the licensee's right to subpoena the arresting officer.

The *Burkhart* decision applied the three-part analysis of *Mathews* v. *Eldridge, supra,* 424 U.S. 319, concluding that federal due process did not bar reliance on the arresting officer's sworn report. In connection with the government interest in the proceeding, the court noted: "The licensee has an absolute right to compel his attendance if he requests a subpena, has it served and pays the statutory fee." (124 Cal.App.3d at p. 110.) The court

remanded the case for a further hearing solely because the Department of Motor Vehicles had effectively deprived the licensee of an opportunity to subpoena the officer by giving misleading assurances that the officer would be present at the hearing: "By virtue of the fact that Burkhart had been led to believe that the officer would be present at the administrative hearing, he could not be faulted for failure to serve his own subpena." (*Id.* at p. 113.)

In both the *Mackler* and *Hughes* decisions, the arresting officer failed to appear pursuant to subpoena under circumstances that were not fully explained by the record. Following *Burkhart,* the decisions hold that the "licensee's due process rights to cross-examine the police officer who made the written sworn statement . . . are adequately protected by his obvious entitlement to produce evidence controverting the statement at the hearing and, if he so chooses, he could call the arresting officer himself." (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d at p. 61; *Hughes* v. *Alexis, supra,* 170 Cal.App.3d at p. 811.) Since the officer did not appear in response to subpoena, the decisions remanded the case to give the licensee a further hearing "to obtain the officer's testimony on subpoena or to explore fully the reasons for his failure to appear." (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d at p. 63.) In reviewing these decisions, *Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d 1364, 1376, observes, "When the arresting officer fails to appear, the licensee who wants a chance to confront and cross-examine the officer has every right to obtain a postponement and subpena the witness, at his or her own expense. Due process concerns are thus satisfied."

In *Boddie* v. *Connecticut* (1971) 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780], the United States Supreme Court first held that a statutory fee may deprive indigents of a constitutionally protected right. (See also *Logan* v. *Zimmerman Brush Co.* (1982) 455 U.S. 422, 430, fn. 5 [71 L.Ed.2d 265, 274, 102 S.Ct. 1148]; *Cohen* v. *Board of Supervisors* (1971) 20 Cal.App.3d 236 [97 Cal.Rptr. 550].) The State of Connecticut required payment of a $60 fee for filing a divorce action. The plaintiffs were welfare recipients who lacked the financial means to pay the fee and had failed to secure judicial waiver of the fee. Under these circumstances, they were "structurally . . . in the position of defendants. The state's monopoly on marriage dissolution *forced* them to settle their claims in court." (Tribe, American Constitutional Law (2d ed. 1988) § 16-44, p. 1639, fn. 8.) The court held that the fee requirement violated due process by depriving them of access to the court: "given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who

seek judicial dissolution of their marriages." (*Boddie* v. *Connecticut, supra,* 401 U.S. at p. 374 [28 L.Ed.2d at pp. 116-117].)

The *Boddie* decision was applied to facts somewhat closer to the present case in *Little* v. *Streater* (1981) 452 U.S. 1 [68 L.Ed.2d 627, 101 S.Ct. 2202]. The state brought a suit to establish paternity against an indigent who sought unsuccessfully to compel it to pay the cost of a blood test needed for his defense. Applying the analysis of *Mathews* v. *Eldridge, supra,* 424 U.S. 319—a decision rendered after *Boddie*—the court held that the denial of a state-subsidized blood test deprived the indigent of a meaningful opportunity to present a defense: "Without aid in obtaining blood test evidence in a paternity case, an indigent defendant, who faces the State as an adversary . . . and who must overcome the evidentiary burden Connecticut imposes, lacks 'a meaningful opportunity to be heard.'" (452 U.S. at p. 16 [68 L.Ed.2d at p. 638].)

The United States Supreme Court has, however, refused to extend *Boddie* to the fees required to obtain discharge in bankruptcy (*United States* v. *Kras* (1973) 409 U.S. 434 [34 L.Ed.2d 626, 93 S.Ct. 631]) or to secure judicial review of an administrative hearing upholding the reduction of welfare benefits. (*Ortwein* v. *Schwab* (1973) 410 U.S. 656 [35 L.Ed.2d 572, 93 S.Ct. 1172]; see also *Jara* v. *Municipal Court* (1978) 21 Cal.3d 181 [145 Cal.Rptr. 847, 578 P.2d 94, A.L.R.4th 4307].) In both cases, the court distinguished *Boddie* on two grounds: first, the indigents' interest at stake in the proceedings—discharge in bankruptcy and entitlement to welfare benefits—had "less constitutional significance" than the interest of the *Boddie* plaintiffs in dissolution of their marital relationship; and, second, the indigents possessed "alternatives, not conditioned on the payment of fees, to the judicial remedy." (*Ortwein* v. *Schwab, supra,* 410 U.S. at p. 659 [35 L.Ed.2d at p. 576].)

With regard to other nonjudicial remedies, the court noted that the indigent bankruptcy petitioner in *Kras* had an array of other means to adjust "his legal relationship with his creditors. . . . [¶] However unrealistic the remedy may be in a particular situation, a debtor, in theory, and often in actuality, may adjust his debts by negotiated agreement with his creditors. At times the happy passage of the applicable limitation period, or other acceptable creditor arrangement, will provide the answer." (*United States* v. *Kras, supra,* 409 U.S. at p. 445 [34 L.Ed.2d at p. 636].) In challenging the reduction of welfare benefits, the *Ortwein* plaintiffs had already received evidentiary hearings, comporting with due process, before seeking judicial review. "The hearings provide a procedure, not conditioned on payment of any fee, through which appellants have been able to seek redress. This Court has long recognized that, even in criminal cases, due process does not

require a State to provide an appellate system." (*Ortwein* v. *Schwab, supra,* 410 U.S. at pp. 659-660 [35 L.Ed.2d at p. 576].)

I conclude that the present case cannot be distinguished from *Boddie* on the grounds enunciated in *Kras* and *Ortwein*. It may be true that suspension of a driver's license has less constitutional significance than the dissolution of the marital relationship, but I do not read *Kras* and *Ortwein* as holding that this consideration alone is necessarily decisive. Unlike the *Kras* petitioner, appellant possessed no alternative private or judicial remedies to oppose the suspension of his driver's license. The state has exclusive power to issue and suspend a driver's license, just as it monopolizes formation and dissolution of the marital relationship. And unlike the *Ortwein* plaintiffs, appellant had received no prior evidentiary hearing, and could seek no alternative administrative remedy to the hearing at issue.

As in *Little* v. *Streater, supra,* 452 U.S. 1, the state's right to require payment of the witness fee must be tested under the three-part analysis of *Mathews* v. *Eldridge, supra,* 424 U.S. 319. "It is well recognized that the private interest at stake in this case—the right to retain a driver's license absent competent proof of a violation of the law—is a substantial one." (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313].) The right to a driver's license "has always been respected by our courts as having great practical importance, although it has never been given the constitutional status of a 'fundamental right' for due process or equal protection purposes." (*Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1376; *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 397 [188 Cal.Rptr. 891, 657 P.2d 383].)[3] The practical consequence of a license suspension will extend beyond the actual four-month period of suspension; it will remain on his record for seven years (Veh. Code, § 13353.3, subd. (b)(2)) and will adversely affect his automobile insurance rates (Ins. Code, § 11624).

It may be true, as observed in *Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, 109, that the factual issues presented by the administrative suspension of a driver's license are often simple and "do not carry with them a substantial risk of error." But the present case illustrates that this is not always the case. In a preliminary alcohol screening test with a mobile intoxilyzer at the scene of arrest, appellant showed a blood-alcohol content of only .078. Officer Gummert based the arrest, not on the blood-alcohol test, but on personal observation of appellant's physical symptoms

---

[3]My colleagues describe appellant as suggesting that "the privilege to drive [is] a fundamental right." (Maj. opn., *ante,* p. 1416.) I do not understand him as taking this position. In any event, it would be unnecessary to support his case.

of intoxication and his performance of field sobriety tests. About half an hour later appellant was given two more breath tests at the San Francisco Hall of Justice which registered blood-alcohol contents of .08 and .09. Appellant offered a plausible explanation for his apparently erratic driving prior to the arrest and displayed a good memory of his performance in the field sobriety tests. He claimed that the intoxilyzer tests at the Hall of Justice were unreliable because "they were having trouble with the machine. They were banging the machine with a piece of stick to make it work." Whatever may be the truth of the matter, appellant has raised questions concerning the accuracy of his blood-alcohol testing that demand a careful evidentiary hearing to be adequately resolved. In the absence of the arresting officer, the hearsay evidence in the officer's sworn report cannot be weighed meaningfully against appellant's own testimony.

In general, we do not question the government's interest in imposing the witness fee. The state "has financial concerns" (*Little* v. *Streater, supra,* 452 U.S. 1, 14 [68 L.Ed.2d 627, 637-638]); it may legitimately demand that licensees share the economic burden of an evidentiary hearing. Moreover, "[i]t does not comport with the public interest to require the presence of the arresting officer at every hearing" (*Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, 110); the state may properly place the burden on the licensee to "insure the officer's attendance." (*Ibid.*) But these interests would not be significantly subverted by exempting indigents from the obligation to pay the witness fee. Indeed, the state's interest is the same as that justifying fees in ordinary civil litigation where indigents enjoy a right to proceed in forma pauperis not present here.

This latter point demands some extended consideration. I recognize that the outcome of my analysis under *Mathews* v. *Eldridge, supra,* 424 U.S. 319, might well be different if appellant possessed a meaningful right to proceed in forma pauperis. This right does not exist. Under the English common law made applicable to California by Civil Code section 22.2, the courts possess an inherent power "to remit fees on petition in forma pauperis." (*Martin* v. *Superior Court* (1917) 176 Cal. 289, 293 [168 P. 135]; *Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 657 [94 Cal.Rptr. 398, 484 P.2d 70]; *Earls* v. *Superior Court* (1971) 6 Cal.3d 109, 113 [98 Cal.Rptr. 302, 490 P.2d 814].) Administrative proceedings before the Department of Motor Vehicles, however, are not governed by the common law and are subject only to limited judicial review. I have found no precedent suggesting that the power of common law courts to waive fees of civil litigants within their jurisdiction includes a power to waive fees in administrative proceedings outside the common law system.

Similarly, I do not construe the rules of the Judicial Council governing petitions in forma pauperis as applying to administrative proceedings before

the Department of Motor Vehicles. The scope of the rules is limited to the Judicial Council's jurisdiction over the court system. Under California Constitution, article VI, section 6, the Judicial Council has power to "adopt rules for court administration, practice and procedure." Regulating the exercise of this power, Government Code section 68511.3, subdivision (a), directs the Judicial Council to adopt "rules of court for litigants proceeding in forma pauperis." The statute clearly refers only to matters lying within the Judicial Council's constitutional jurisdiction over the court system; for example, section 68511.3, subdivision (a)(3), requires that the rules provide "for proceeding in forma pauperis at every stage of the proceedings at both the appellate and trial levels of the court system," and section 68511.3, subdivision (a)(5) states "that the court may authorize the clerk of the court, county financial officer, or other appropriate county officer to make reasonable efforts to verify the litigant's financial condition without compromising the confidentiality of the application."

Consistent with this statutory authority, the rules actually promulgated by the Judicial Council under the statutory mandate of Government Code section 68511.3 refer only to "court fees and costs." (Cal. Rules of Court, rules 985 & 982(a)(17) & (a)(20).) Any interpretation of the rules as applying to an administrative proceeding before the Department of Motor Vehicles would not only go beyond their literal terms but would impute to the Judicial Council a jurisdiction, unwarranted by the California Constitution or statute, extending beyond the court system.

My colleagues argue (maj. opn., *ante*, p. 1417) that appellant in fact had the right to proceed in forma pauperis under Government Code section 68097.55 which provides: "Notwithstanding the provisions of Section 68097.5, the court, upon good cause shown, including the fact that the party is proceeding in forma pauperis pursuant to Section 68511.3, may relieve a party of the duty to make any deposit or payment, or portion thereof, required by Sections 68097.1, 68097.2, 68097.3, 68097.4, and 68097.5." Under the authority of this statute, they argue, appellant could have petitioned the court, presumably by filing a petition for writ of mandate, for an order relieving him of the duty of paying the witness fee in the administrative proceeding. But assuming this option existed, I do not consider that it mitigates our due process concerns since the filing of a separate civil proceeding in superior court to vindicate the right of cross-examination would, as a practical matter, involve even greater burden than payment of the $150 witness fee.[4]

In the absence of any administrative procedure to remit fees on the ground of indigence, I conclude that Government Code section 68097.2 would

---

[4]By the same token, I reject my colleagues' argument that appellant's failure to pursue this burdensome remedy displayed a lack of "due diligence." (Maj. opn., *ante*, p. 1417.) A

violate due process if construed as requiring indigent licensees to pay a $150 witness fee as a condition to subpoenaing the arresting officer. The only precedent with closely parallel facts reaches a similar conclusion. In *Bacon v. Graham* (D.Ariz. 1972) 348 F.Supp. 996, a three-judge district court held that a state agency could not require an indigent welfare recipient to pay "witness fees and mileage" expenses as a condition for issuing subpoenas to expert witnesses in a hearing reviewing termination of welfare benefits. (See also *Bilagody* v. *Thorneycroft* (1979) 125 Ariz. 88 [607 P.2d 965, 968].)

As we recently observed in *Balmoral Hotel Tenants Assn.* v. *Lee* (1990) 226 Cal.App.3d 686, 691 [276 Cal.Rptr. 640], "the courts should impute to the Legislature 'an honest purpose to keep within constitutional limits.' " Since it would violate due process to require indigent licensees to pay a $150 witness fee as a condition for subpoenaing the arresting officer in the administrative proceeding at issue and because the Legislature has provided no procedure for remitting the fee in such a proceedings, I infer that the Legislature did not intend Government Code section 68097.2 to require payment of the fee in this kind of proceeding. This inference merely serves to fortify my earlier analysis of legislative intent.

These considerations lead me to conclude that a "civil action or proceeding" within the meaning of Government Code section 68097.1 does not include a hearing pursuant to Vehicle Code section 13558 before the Department of Motor Vehicles to review the administrative suspension of a driver's license.[5]

As my colleagues note, my interpretation of Government Code section 68097.2 has implications for the interpretation of the provisions of sections 68097.1 and 68097.3 which permit service of subpoenas on members of the California Highway Patrol by delivering a copy to the appropriate office of the department; the sections are governed by the same statutory language, "civil action or proceeding." I cannot accept, however, my colleagues' formalistic logic that "[i]f . . . section 68097.1 does not apply, then [appellant] has failed to properly serve this subpoena . . . and may not now

---

requirement to exercise "due diligence" of this sort would unreasonably burden the right of cross-examination.

[5]Respondents point out that Vehicle Code section 13353.2, subdivision (e), states: "The determination of the facts in subdivision (a) [referring to the act of driving a motor vehicle with a blood-alcohol content of 0.08 percent or more] is a civil matter which is independent of the determination of the person's guilt or innocence, shall have no collateral estoppel effect on a subsequent criminal prosecution, and shall not preclude the litigation of the same or similar facts in the criminal proceeding." I do not consider, however, that this language has any relevance to the interpretation of the intended scope of Government Code section 68097.2.

complain of Officer Gummert's failure to attend the hearing." (Maj. opn., *ante*, p. 1415.) It follows rather that the person whom appellant contacted at the public service counter of the office of the California Highway Patrol erred both in demanding payment of the $150 witness fee under Government Code section 68097.2 and also in purporting to have authority to accept service of the subpoena under Government Code sections 68097.1 and 68097.3. Since the California Highway Patrol acts as the enforcement arm of the Department of Motor Vehicles (Veh. Code, § 2103), these actions must be imputed to the Department of Motor Vehicles; if so, they represent an unconstitutional interference with the exercise of appellant's right of cross-examination in the license suspension proceeding.

My conclusion implies that subpoenas requiring the attendance of officers of the California Highway Patrol in such hearings are governed instead by the general provisions of Government Code section 11510, subdivision (c). Accordingly, respondents acted without statutory authorization in demanding that appellant pay a $150 witness fee as a condition for accepting a subpoena requiring Officer Gummert's attendance at the administrative hearing on December 27, 1990, and thereby infringed his statutory and constitutional right to confront and cross-examine adverse witnesses at the hearing.

Appellant's petition for review by the Supreme Court was denied May 13, 1993. Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.