Filed 1/4/21  Lopez v. Shiomoto CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.** |
| --- |

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GEORGE IVAN LOPEZ, | D076081 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-00006716-CU-WM-NC) |
| JEAN SHIOMOTO, as Director, etc., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Pamela M. Parker, Judge.  Affirmed.

Rodney Gould for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Jodi L. Cleesattle and Vanessa W. Mott, Deputy Attorneys General, for Defendant and Respondent.

On July 28, 2018, deputies from the San Diego County Sheriff's Department responded to a noise complaint at the home of George Ivan Lopez.  Family members roused Lopez from his sleep to speak to the deputies, but when another family member began to cause a scene, the deputies asked Lopez to step outside.  Lopez went to sit in his vehicle.  A

deputy sheriff subsequently heard the vehicle's engine start and saw it move forward slightly. The deputy heard over the radio that the driver appeared to be "very intoxicated" and should not be permitted to leave. The deputy promptly detained Lopez and subsequently arrested him for driving under the influence of alcohol (Vehicle Code, § 23152) and refusing to take a chemical test (§ 23578).[1] The deputy issued an order suspending Lopez's driving privileges.

Lopez requested an administrative hearing before the Department of Motor Vehicles (DMV or department) and attempted to subpoena the deputy sheriff to appear at the hearing; however, the deputy sheriff did not appear. After the hearing, the department determined suspension of Lopez's driving privileges was warranted due to Lopez's refusal to complete a chemical test when requested by the deputy sheriff. On review, the trial court agreed the weight of the evidence supported the department's decision. On appeal, Lopez contends he was denied due process because the deputy sheriff did not comply with the subpoena. We conclude that Lopez did not exercise the required diligence to secure the deputy's attendance at the hearing because Lopez failed to properly effect service on the deputy and neglected to include the appropriate witness fee with the subpoena. As such, Lopez cannot establish a violation of his due process rights. We further conclude the trial court's determinations are supported by substantial evidence, and we therefore affirm the judgment upholding the suspension of Lopez's license.

BACKGROUND

A. *Arrest Report and Supporting Documentation*

The arresting officer was deputy sheriff Nicholas Jehl. On July 29, 2018, Deputy Jehl prepared an arrest report, which indicated that Lopez was

---

[1] Unless otherwise specified, statutory citations are to the Vehicle Code.

arrested for violating Vehicle Code sections 23152, subdivisions (a) and (b) (driving under the influence of alcohol with a blood alcohol level of 0.08 percent or more) and 23578 (penalties for excessive blood alcohol or refusal to take a chemical test).[2]

Deputy Jehl's statement in the arrest report stated:

> "I arrived on scene and saw [other deputies] were on scene prior to my arrival. I noted a heavy-set male wearing a white button-up dress shirt [Lopez] walking toward a white truck. I observed that male, later identified as George Lopez, enter the vehicle. I saw the headlights turn on as I began to exit my patrol vehicle. I heard the engine start and I could hear [the deputy] on the radio stating something similar to, 'Hey, don't let that guy in the white truck drive away, he's very intoxicated!' I looked around and saw only one individual and one truck in my immediate area which matched the description.

> " . . . I could hear the white truck engage the transmission and I could hear/see the suspension 'squat.' The truck moved forward slightly and I suspected, due to [the deputy's] radio transmission, the driver of the truck, Lopez, was possibly under the influence of an alcoholic beverage.

> "I commanded Lopez to stop. As I walked up to him, I immediately noted several signs/symptoms of alcoholic beverage intoxication. His jaw was lax, his eyelids were droopy, his eyes were watery, and I could smell the odor of an alcoholic beverage emitting from his breath/person. I asked Lopez directly if he had been drinking. Lopez denied

---

2     Vehicle Code section 23578 provides in relevant part: "In addition to any other provision of this code, if a person is convicted of a violation of Section 23152 or 23153, the court shall consider . . . the refusal of the person to take a breath or urine test[] as a special factor that may justify enhancing the penalties in sentencing, in determining whether to grant probation . . . ." "If a person refuses the officer's request to submit to . . . a chemical test . . . , the department shall" suspend or revoke the person's driving privileges. (§ 13353, subd. (a).)

drinking anything alcoholic. I conducted a preliminary Horizontal Gaze Nystagmus (HGN) bounce test. I noted Lopez was unable to smoothly pursue the tip of my finger with his eyes.

"I asked Lopez to exit his vehicle for the purposes of conducting a full set of [s]tandardized [f]ield [s]obriety [t]ests. . . . During my examination, Lopez admitted to recently consuming some over-the-counter sleeping pills (Seroquel)."

Deputy Jehl's report further indicated that, after he administered the field sobriety tests, Lopez repeatedly declined to submit to chemical testing:

"I asked Lopez if he would be willing to submit to a Preliminary Alcohol Sensor (PAS) device test. Lopez declined to provide a sample. Based on the previously mentioned objective signs/symptoms in addition to Lopez'[s] performance o[n] the SFSTs, I believed he was under the influence of an alcoholic beverage while operating a motor vehicle. I placed him under arrest . . . .

"I walked Lopez to my patrol vehicle and asked him which chemical test (blood/breath) he would be willing to submit to. Lopez declined to provide either. I sat him in the back seat while seat belting him for safety. I transported Lopez to the Vista Detention Facility (VDF) for processing. Due to Lopez refusing to provide a chemical sample, I fully admonished him per the DMV DS-367 form. When I asked Lopez if he would be willing to provide a breath sample[,] Lopez responded, 'No, Sir.' When I asked Lopez if he would be willing to provide a blood sample[,] Lopez responded, 'No Sir.' I confirmed with Lopez that he understood it was considered a refusal and Lopez stated he understood."

Deputy Jehl's report concluded that he then sought and obtained a warrant for Lopez's blood and watched as a phlebotomist completed the blood draw.[3]

---

[3] Results from the blood draw do not appear in the record.

4

Deputy Jehl also prepared an officer's statement using DMV form DS 367 (officer's statement). Deputy Jehl signed the statement under penalty of perjury on July 29, 2018. The officer's statement indicated that the deputy had observed Lopez driving, that the deputy "had reasonable cause to believe the driver was driving . . . while under the influence," and that Lopez was arrested at 00:34 a.m. on July 29, 2018. Deputy Jehl indicated he observed the following "objective symptoms of intoxication" by checking the boxes next to "Bloodshot/watery eyes," "Odor of alcoholic beverage," "Unsteady gait," and "Slurred speech," and in the box marked "Other," Jehl wrote "HGN." By checking boxes, Jehl indicated the case involved "Chemical Test Refusal," "Forced Blood Test," and "0.08 [percent] or more BAC Chemical Tests Results."

The officer's statement indicated Jehl "admonished the driver on [July 29, 2018] at 00:38 AM" that he was "required by state law to submit to a PAS [parenthetical] or other chemical test to determine the alcohol and/or drug content" of Lopez's blood. Jehl indicated he admonished Lopez that, because Jehl believed he was under the influence of alcohol, he had the choice of taking a breath or blood test. Jehl indicated Lopez responded, "No Sir" to a breath test, and "No Sir" to a blood test.

On a page attached to the officer's statement, Deputy Jehl described the following details relating to probable cause: "I responded to a radio call regarding a loud party. When I arrived, I saw the listed driver enter his vehicle, start the engine, and begin to move forward. I heard a fellow deputy get on the radio [and] state the driver was likely intoxicated. I stopped the driver and immediately noted signs/symptoms of alcohol intoxication. The driver was evaluated [and] performed poorly. When asked to provide a

5

chemical samples [*sic*] the driver refused.  A warrant was obtained [and] a blood draw was completed."

Deputy Jehl issued Lopez an "Administrative Per Se Suspension/Revocation Order."  The order stated that Lopez's driving privilege would be suspended effective 30 days from the date of the order and that this action was being taken because Lopez was arrested or detained for driving under the influence of alcohol and refused to submit to a chemical test of his blood alcohol content.

B.  *Administrative Proceedings*

1.  *Request for a Hearing and Discovery*

On July 30, Lopez—through retained counsel—sent a letter to the department requesting they calendar an in-person hearing, temporarily stay the license suspension, and send counsel copies of all discovery.  Counsel issued a formal request for discovery on August 30.

On September 20, Lopez's counsel sent another letter notifying the department that the district attorney's office had declined to file criminal charges against Lopez.  The letter informed the department that the sheriff's department had not provided the affidavit in support of the search warrant or the blood test results.  The letter requested "that all the law enforcement officers named in the report be subpoenaed by the [a]gency to appear by telephone so that we may ascertain which one [of] them told Mr. Lopez to sit in his car."

On October 1, the department provided notice that Lopez's in-person hearing was scheduled for November 30.

Shortly thereafter, Lopez's counsel attempted to issue a subpoena to command Deputy Jehl to appear at Lopez's hearing as a percipient witness.[4]

---

4       The subpoena was prepared using DMV form DS 2000P (rev. 7/2013).

The subpoena requested Deputy Jehl to "[p]lease bring the affidavit in support of the search warrant obtained for the blood draw." Lopez served the subpoena on October 4, 2018, by U.S. mail addressed to Deputy Jehl at the Vista station of the San Diego County Sheriff's Department. Lopez enclosed a check for witness fees in the amount of $150.[5]

Lopez's counsel later informed the hearing officer in writing that counsel had "meticulously followed the subpoena instructions on DS 2000P [the DMV subpoena form] and accompanying instructions per the DMV website link." Counsel further stated, "The result was [a] failure. [¶] The Sheriff's business office contacted me to advise the following[:] (1) the fee is $275 not $150 just for the appearance; (2) I am responsible for *personally serving* the deputy, even though his contact information is confidential. Based on my conversation with Melissa at the Sheriff's business office in San Diego, it will be virtually impossible for me to serve the deputy" (capitalization omitted, italics added). Counsel requested that "the [d]epartment issue a subpoena for the investigating officer to testify at the hearing date" and that "the department serve the deputy to appear on November 30."

By letter dated October 16, the hearing officer informed Lopez it would not assist in subpoenaing peace officer witnesses. The letter stated: "It appears, from your message, the law enforcement agency has a policy and procedure regarding how to subpoena an officer. The agency did not state they will not honor the subpoena, rather they informed you of the procedure

---

[5] A copy of the check does not appear in the record; however, a letter from Lopez's counsel reflects the enclosure of a $150 check for the appearance fee with the subpoena. Further, the record reflects that, at the hearing, counsel produced a copy of the check and requested that it be included "in the file." The hearing officer indicated it would be included.

required to subpoena an officer. After consulting with management, your request to subpoena Officer Jehl on behalf of your client is denied. I regret my response could not be more favorable."

### 2. *Administrative Per Se Hearing*

Lopez appeared with counsel at his in-person hearing on November 30. The hearing officer indicated the scope of the hearing was limited to four issues: (1) Did the officer have reasonable cause to believe Lopez was driving a motor vehicle in violation of Sections 23152 or 23153 of the Vehicle Code? (2) Was Lopez lawfully arrested? (3) Was Lopez told his driving privilege would be suspended or revoked if he refused to submit to or failed to complete a chemical test? (4) Did he refuse to submit to or fail to complete a chemical test after being requested to do so by a peace officer? (See §§ 13353, subd. (d), 13557, subd. (b)(1).)

The hearing officer indicated she would introduce Deputy Jehl's officer's statement, the arrest report, and a printout of Lopez's DMV driving record as exhibits. The hearing officer then indicated "[t]hat does conclude the [d]epartment's presentation" and invited Lopez to proceed with his case.

Lopez testified under oath at the hearing. He stated that he is a truck driver with a commercial driver's license. On the day of his arrest, the family had a party to celebrate his niece's baptism. The party was at Lopez's house; he owns the home and is the provider for his large family. Lopez took a "ZzzQuil" as a sleep aid (not "Seroquel") and went to bed around 7:00 or 8:00 p.m. that evening because he had to get up to work at 2:30 in the morning. Lopez's sister roused him from his sleep telling him "the cops are outside, and they want to talk to the owner [of the house]." Near the front of the house, Lopez saw his sister-in-law; she was intoxicated and attempted to push him. Lopez went to re-enter his house, but the deputy told him to leave,

even when Lopez explained he owned the house. Lopez went to his vehicle, which was parked "in the easement . . . in [¶] . . . [¶] the driveway."[6]

Lopez testified he sat in the driver's seat and "just laid back like that," and then an officer knocked on his window and asked if he had been drinking. However, when counsel asked Lopez if he had turned on the vehicle's air conditioning, Lopez then testified he "tried the battery for the AC" but he did not kick over the engine, and he denied that he was driving.

Lopez testified that, after he performed all the field sobriety tests the officer administered, the officer told him about "a breath test," but Lopez just said he was sleepy and wanted to go back inside. At that point, the officer arrested him.

Lopez testified the officer brought him to the Vista jail, which was a short drive from his home; sat him down; and told him they were going to do a blood test. Lopez said he waited four or five minutes for someone to come perform the blood test, and when the man came, Lopez stuck his hand out and told him to hurry because Lopez was afraid of needles.

Lopez acknowledged refusing the breathalyzer but denied refusing the blood test. Lopez also denied being admonished regarding the repercussions of refusing to take a blood test.

The hearing officer cross-examined Lopez and asked him if his air conditioning would work without turning on his truck "[b]ecause most vehicles . . . the air will come out, but it won't get cold." Lopez then said that "[he] turned it on, and [he] put down a little bit the window[,] [a]nd the air

---

6    Lopez testified the driveway to his house is an easement which is about 40 feet long and poorly maintained. He did not recall if he had the keys to his vehicle but said his vehicle was locked. He testified, and the documents confirmed, that he did not have keys to his vehicle when his property was inventoried at the jail.

came out," but continued to insist he "did not turn over the engine." The hearing officer confirmed that Lopez's testimony was that he "said no, sir about the [p]reliminary [a]lcohol [s]creening test at [his] home, but when [they] got to the jail . . . the officer did not advise [Lopez] that [he was] required to submit to a chemical test, after [he] was arrested." Lopez responded, "No. He did not."

On redirect, Lopez testified he was confused but did not tell the deputy he did not understand what was going on "because [the deputy] already looked frustrated, and . . . he handcuffed me." Lopez testified that "maybe [he] made [a mistake]" by not requesting an interpreter because English is his second language.

Lopez's sister testified that the family was at Lopez's home to celebrate their niece's christening. When the police arrived, she was nearby, watching. The deputy sheriff asked to speak to the owner of the home, and another sister went to rouse Lopez from sleep. While Lopez was attempting to speak to the officer, their sister-in-law, who was very intoxicated, began to make a scene, and "the officer started telling my brother to leave." She testified, "the officer was taking my brother out of his own house, when he was obviously sleeping, and they just wanted to talk to him, because he was the owner of the house." Lopez's sister testified Lopez then got in his truck, which was parked in the alley out front of the house. She testified she did not see what Lopez did when he got into his vehicle and admitted it was possible she would not have been able to hear the truck start over the music playing at the house. She testified she was confident the truck did not move.[7]

---

7    Lopez was prepared to call his other sister to testify that she had roused him from bed, but the hearing officer offered to stipulate to that fact.

Lopez's counsel argued in closing that the police report was "very bare-bones" and implored the hearing officer to give Lopez "the benefit of the doubt." Counsel argued, "the officer is not here. And that's not our doing. I have done everything possible to get the officer here, and the agency, not you—it's the agency. They're the prosecutors. They decided no. We're not going to do it, not going to bring in the body cameras, not going to bring in the officers, not going to bring in the warrants."

### 3. *Decision After Hearing*

After the hearing, the hearing officer issued a written decision refusing to set aside the suspension of Lopez's driving privilege. The hearing officer relied on the arrest report and the officer's statement to support her findings of fact. The hearing officer found there was probable cause to initially detain Lopez in that officers were called to the house due to noise complaints after a family party, Deputy Jehl observed Lopez enter his vehicle in front of the house, Deputy Jehl was notified by radio that another deputy suspected Lopez was "very intoxicated," Deputy Jehl saw Lopez's vehicle move forward slightly, and Deputy Jehl then commanded Lopez to stop. The hearing officer found the deputy observed objective symptoms of intoxication, including bloodshot and watery eyes, odor of alcohol, unsteady gait, slurred speech, and unsatisfactory field sobriety test results. The hearing officer found the evidence indicated Lopez was then arrested for violating Vehicle Code section 23152.

The hearing officer further found that, despite Lopez's contrary testimony, Deputy Jehl's written reports clearly documented that Lopez was admonished regarding the repercussions for refusing chemical testing, and Lopez nonetheless refused testing. The hearing officer found Lopez's "refusal was clear and unequivocal even though he submitted to the blood draw," and

11

"the department's evidence is deemed sufficient to establish [that Lopez] was properly read the admonition and [that Lopez] refus[ed] to submit to a chemical test." The hearing officer thus concluded that Lopez "was told that his driving privilege would be suspended or revoked if he refused to complete the required testing," and Lopez "did refuse or fail to complete the chemical test or tests after being requested to do so by a peace officer."

The hearing officer rejected Lopez's defense that he was not driving, noting that the arrest report documented Jehl's observation that the vehicle moved forward slightly. The hearing officer further noted circumstantial evidence supported the finding that Lopez was driving: Lopez exited from the driver's seat of the vehicle, he was the registered owner of the vehicle, and he did not identify anyone else driving the vehicle.

The hearing officer found that Lopez and his sister were not credible because their testimony was self-serving.

The department notified Lopez that his driving privileges would be suspended for one year, and further notified him he would be required to surrender his commercial driver's license as a result of this suspension.

C. *Proceedings in the Superior Court*

Lopez filed a petition for writ of mandate in the San Diego Superior Court, seeking judicial review of the administrative action.[8] In his petition, Lopez contended that he had established, "by the totality of the circumstances and by his witnesses and his own testimony at the hearing,"

---

8    Lopez requested that the trial court stay the administrative order suspending his driving privileges pending review. The trial court imposed a stay. By writ of supersedeas, Lopez also requested this court to stay the suspension of his driving privileges pending appeal, which we granted on September 19, 2019. As such, a stay of the administrative order suspending Lopez's driving privileges has remained in effect during the pendency of this appeal.

12

that the criteria for suspension of his license had not been met. Lopez challenged the propriety of the administrative procedure, asserting that "[t]he deputy was not subpoenaed by the agency, despite [c]ounsel's demand for his appearance. The Sheriff's Department refused to abide by DMV protocol to accept service for the deputy. This objection was raised at the hearing and documentary evidence was submitted to support [Lopez's] objections that his right to a fair hearing was tainted by gamesmanship conducted by the [d]epartment. The [d]epartment always subpoenas an officer but only when it suits the hearing officer's case against the Respondent. The one-sidedness of this protocol violates the due process of law rights of every driver who demands a hearing with the arresting officer present." Lopez further argued that the department abused its discretion when it "refused to call the officer as a witness despite the failure of the Sheriff's department to follow the DMV protocol."

The department opposed Lopez's petition, contending Lopez's attempt to subpoena the deputy was defective and that Lopez was informed of the defects and the department's refusal to issue a subpoena with ample time before the hearing. The department further contended there was a strong presumption that the hearing officer's findings are correct and that the hearing officer properly admitted Deputy Jehl's sworn statement and arrest report into evidence. The department further argued that it has a mandatory duty to suspend the driving privileges of a motorist who is lawfully arrested for driving under the influence and that the arresting deputy properly detained Lopez and then lawfully arrested him for drunk driving.

13

Prior to the scheduled hearing on Lopez's petition, the superior court issued a tentative decision denying Lopez relief.[9]  Lopez appeared at the initial hearing on his petition and requested a continuance to file supplemental briefing addressing legal issues raised in the tentative ruling: "specifically the issue [of] . . . whether the hearing officer at a DMV suspension hearing who serves both as an arbitrator and as a biased advocate for the agency should receive the same deference in her rulings upon this writ of mandate."  The court granted Lopez's request and continued the hearing.

In supplemental briefing, Lopez contended that he had "followed protocol to subpoena the officer to make sure he would be available for critical cross-examination.  The Sheriff's Department refused to follow the written DMV protocol provided to counsel. . . .  The Sheriff's [Department] stated that contrary to the DMV's written protocol, it would not accept service and that [Lopez] 'needed to personally serve the deputy.'  Since the deputy's home address is not provided, this roadblock to serve him personally rendered him secreted.  Instead of easily issuing a subpoena at [c]ounsel's request, the hearing officer refused."

At the hearing, the trial court pressed the attorney regarding her contention that the subpoena was improperly ignored—stating there was no evidence on that issue, only an attorney letter.  "What you would need to do is attach the protocol and say, they violated this protocol.  And they did not do this.  And, by the way, I didn't see any request for a continuance based on the fact that the officer wasn't there.  I saw a request for a continuance based on the lack of discovery.  But I didn't see one based on the fact that—your honor,

---

9    The tentative order does not appear in the record; however, it appears the tentative was substantially similar to the minute order issued after the subsequent hearing.

we can't go forward today. It would be a denial of due process. You never said that."

After argument, the trial court issued a detailed, eight-page order denying Lopez relief. The trial court stated that, in reviewing the administrative decision, it was required to determine, based on its independent judgment, whether the weight of the evidence supported the decision. The trial court observed that the disputed issues were whether Jehl had reasonable cause to believe that Lopez had been driving a motor vehicle, whether Lopez refused to submit to chemical testing after Jehl's request, and whether Lopez had been told that his license would be suspended if he refused to submit to or did not complete the test or tests. The trial court acknowledged that the evidence presented on these issues was "conflicting," but that the officer's written reports regarding the incident which supported the administrative decision constituted admissible, relevant evidence on which the hearing officer was permitted to rely.

The trial court considered Lopez's testimony and observed that Lopez testified he stated he had taken an over-the-counter sleeping aid called "ZzzQuil" (not Seroquel). The trial court observed that Lopez initially testified he just sat in his truck, and only when questioned by counsel did he admit he turned the truck on to use the air conditioning, but still denied turning the engine over. The trial court observed that Lopez did not testify the vehicle did not move, and observed that, under the law, even a slight movement can constitute "driving." (See *Henslee v. Dept. of Motor Vehicles* (1985) 168 Cal.App.3d 445, 451-452 [forward movement of several inches constituted driving].)

The trial court emphasized that, where there was a conflict in the evidence, the hearing officer was entitled to believe the contemporaneous

15

notes of the deputy. The trial court ruled that it "cannot find that the hearing officer's determination is contrary to the weight of the evidence." The court acknowledged Lopez's argument that he "was credible and that he testified truthfully," but noted that the court's "role is to determine whether the hearing officer's determination is contrary to the weight of the evidence. It is not." The trial court entered judgment accordingly.

DISCUSSION

I.

*Legal Background and Standard of Review*

"[T]he implied consent law provides that drivers who are arrested on suspicion of [driving under the influence] are deemed to have consented to chemical testing to determine their blood-alcohol concentration." (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 97 (*Espinoza*), citing § 23612, subd. (a)(1)(A).) "The administrative per se procedure is the means by which the [d]epartment suspends or revokes a motorist's driver's license for driving under the influence or for refusing to submit to a chemical test under the implied consent law. 'The procedure is called "administrative per se" because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without additional evidence of impairment.' " (*Espinoza*, at p. 98.)

"Testing for [blood alcohol concentration] is incidental to a lawful arrest for [driving under the influence] and at the direction of the peace officer having reasonable cause to believe the motorist drove under the influence of alcohol in violation of section 23152 or 23153. [Citation.] The motorist must be admonished that failure to submit to or failure to complete a chemical test will result in a fine, mandatory imprisonment if the motorist is subsequently

16

convicted of [driving under the influence] under section 23152 or 23153, and suspension of his or her driver's license. [Citation.] A motorist arrested for driving under the influence of alcohol 'has the choice of whether the test shall be of his or her blood or breath and the officer shall advise the person that he or she has that choice. If the person arrested either is incapable, or states that he or she is incapable, of completing the chosen test, the person shall submit to the remaining test.' [Citation.] If both blood and breath tests are unavailable, the motorist must submit to a urine test." (*Espinoza*, *supra*, 10 Cal.App.5th at pp. 97-98.)

If a motorist refuses to submit to or fails to complete a chemical test, the arresting officer submits a sworn statement to the department that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of sections 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer. (§ 13353, subd. (a); see *Espinoza*, *supra*, 10 Cal.App.5th at pp. 98-99.) Upon receipt of the officer's sworn statement, the department "shall" suspend the motorist's driver's license for one year or revoke the motorist's driver's license for two or three years if the motorist falls within certain recidivist statutes. (§ 13353, subd. (a); see *Espinoza*, at pp. 98-99.)

The department must conduct an administrative review of the record. (§ 13353, subd. (d); see *Espinoza*, *supra*, 10 Cal.App.5th at p. 99.) During administrative review, the department must determine whether the following facts are true: (1) the officer had reasonable cause to believe the motorist drove under the influence of alcohol in violation of section 23152; (2) the motorist was lawfully detained; (3) the motorist refused to submit to or failed to complete a chemical test after being requested by a peace officer; and

17

(4) the motorist was admonished that his or her driving privilege would be suspended or revoked if he or she refused to submit to or failed to complete a chemical test. (§§ 13353, subd. (d), 13557, subd. (b)(1).) If the department concludes those facts to be true by a preponderance of the evidence, it shall sustain the order of suspension or revocation. (§ 13557, subd. (b)(1).) Before or after receiving the results of the administrative review, the motorist may request an administrative hearing. (§§ 13353, subd. (e), 13557, subd. (e), 13558.)

A motorist desiring further review of the department's determination to sustain the suspension order may petition the superior court for review. (Veh. Code, § 13559, see Code Civ. Proc., § 1094.5.) When a driver petitions for review of an order suspending his license, the superior court is required to determine, based on the exercise of its independent judgment, whether the weight of the evidence supports the administrative decision. (*Murphey v. Shiomoto* (2017) 13 Cal.App.5th 1052, 1068-1069 (*Murphey*); *Lake v. Reed* (1997) 16 Cal.4th 448, 457 (*Lake*).) However, " '[o]n appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all legitimate and reasonable inferences in favor of the trial court's decision.' " (*Murphey*, at p. 1069; see *Lake*, at p. 458.)

## II.

### *Lopez Has Not Established He Was Denied Due Process*

A licensee has " 'an absolute right to compel' the attendance of witnesses 'if he requests a [subpoena], has it served and pays the statutory fee.' " (*Monaghan v. Department of Motor Vehicles* (1995) 35 Cal.App.4th 1621, 1626; § 14104.5, subd. (a).)

When the individual subpoenaed is a deputy sheriff, the subpoenaing party must comply with certain provisions of the Government Code. (*Nick v. Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1415 (*Nick*) [holding that Government Code sections 68097.1 and 68097.2 apply to subpoenas served in DMV administrative proceedings].) Service of a subpoena on a deputy sheriff may be made by either serving the deputy personally or delivering two copies to his immediate supervisor (or an agent designated by the supervisor to receive service). (Gov. Code, § 68097.1.)[10] In addition to effecting proper service, the subpoenaing party must tender to the person accepting the subpoena "two hundred seventy-five dollars ($275), together with the subpoena, . . . for each day" that the peace officer's attendance is required. (Gov. Code, § 68097.2, subd. (b).) A subpoena on a peace officer is properly refused absent tender of the required fee. (*Nick*, at p. 1415.)

When a peace officer is properly served with a valid subpoena but refuses to comply, the subpoenaing party must seek to enforce the subpoena using one or more statutory procedures. He may raise an objection at the

---

[10]    Government Code section 68097.1, subdivision (a) provides: "Whenever an employee of the Department of Justice who is a peace officer or an analyst in a technical field, peace officer of the Department of the California Highway Patrol, peace officer member of the State Fire Marshal's Office, sheriff, deputy sheriff, marshal, deputy marshal, district attorney inspector, probation officer, building inspector, firefighter, or city police officer is required as a witness before any court or other tribunal in any civil action or proceeding in connection with a matter regarding an event or transaction which he or she has perceived or investigated in the course of his or her duties, a subpoena requiring his or her attendance may be served by delivering a copy either to the person personally, or by delivering two copies to his or her immediate superior at the public entity by which he or she is employed or an agent designated by that immediate superior to receive that service."

19

administrative hearing, request a continuance (Gov. Code, § 11524), request the hearing officer to issue a subpoena (Veh. Code, § 14104.5, subd. (a)), or request the hearing officer to initiate contempt proceedings by certifying the facts that justify a contempt sanction to the superior court (Gov. Code, §§ 11455.10, 11455.20).  (See *Petricka v. Dept. of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1351 (*Petricka*) [driver must take steps prescribed by statute to challenge the DMV's failure to disclose, including petitioning the superior court for relief, objecting at the administrative hearing, requesting a continuance, and requesting the hearing officer to issue a subpoena]; *Snelgrove v. Dept. of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1376 (*Snelgrove*) ["When the arresting officer fails to appear, the licensee who wants a chance to confront and cross-examine the officer has every right to obtain a postponement and [subpoena] the witness, at his or her own expense.  Due process concerns are thus satisfied."].)

It is incumbent upon the driver to take the appropriate steps to secure the attendance of a witness.  (*Petricka, supra,* 89 Cal.App.4th at p. 1351; *Nick, supra,* 12 Cal.App.4th at p. 1417 [" 'A defendant may not complain of the absence of a witness unless he had made a showing of due diligence to obtain the attendance of the witness.' "].)

When a *properly subpoenaed* officer fails to appear, proceeding with an administrative hearing over the licensee's objection may constitute a violation of due process.  (See *Fitzpatrick v. Dept. of Motor Vehicles* (1993) 13 Cal.App.4th 1771, 1776-1777 [where officer was subpoenaed by both the licensee and the department, department's insistence on proceeding with administrative hearing despite officer's failure to appear resulted in denial of licensee's constitutional and statutory rights to confront and cross-examine the witness against him].)

20

Deputy Jehl's failure to appear at Lopez's hearing raises no due process concerns because the record demonstrates Lopez's subpoena was defective for at least two reasons: ineffective service and an insufficient witness fee.

Lopez did not properly serve the subpoena on Deputy Jehl. (Gov. Code, § 68097.1, subd. (a) [requiring personal service on a deputy sheriff, or, in the alternative, service by delivery of two copies to his or her immediate superior at the public entity by which he or she is employed or an agent designated by that immediate superior to receive that service].) The record indicates Lopez attempted to effect service by mail directed to Deputy Jehl at the address of the station at which he was headquartered. This is not a proper method of service under applicable law.[11] Lopez's protestation that personal service was impossible because he did not know the deputy's home address is unavailing because service alternatively could have been effected by mailing

_____

[11] We thus reject Lopez's claim he "validly served" a subpoena duces tecum for Deputy Jehl's appearance "by placing a copy in the United States mail addressed to the Vista Station of the San Diego County Sheriff's Department," in compliance with Vehicle Code section 14104.5. This claim fails to recognize the additional requirement to comply with Government Code section 68097.1, subdivision (a), when the subpoenaed witness is a deputy sheriff. Indeed, none of Lopez's briefs contains a single citation to the applicable Government Code sections.

21

two copies of the subpoena to Jehl's superior officer at the Vista Sheriff's department.[12]

Moreover, Lopez's subpoena was accompanied by an insufficient witness fee of $150. (Gov. Code, § 68097.2, subd. (b) [appearance fee for peace officer is $275 per day].) The record reflects that Lopez was notified of this deficiency by the Sheriff's business office; however, Lopez made no attempt to correct the error. Failure to tender the proper attendance fees pursuant to Government Code section 68907.2 allows the peace officer to disregard the subpoena. (*Nick*, *supra*, 12 Cal.App.4th at pp. 1416-1417.)

Lopez acknowledged that the sheriff's department promptly informed him his attempted service was defective and notified him of the appropriate witness fee. When the department declined to issue its own subpoena, the hearing officer emphasized that "[t]he agency did not state they will not honor the subpoena, rather they informed you of the procedure required to subpoena an officer." This information was provided to Lopez weeks in advance of his hearing date, leaving him ample time to remedy the defects of the original subpoena, yet Lopez failed to do so. Instead, Lopez appeared at the hearing, claimed his defective subpoena was valid, and proceeded on the merits of the license suspension. At no point during his hearing did Lopez object on due process grounds, request a continuance, or request the hearing

---

[12]   Any apparent failure to understand the governing subpoena procedures does not excuse Lopez from exercising diligence to effect valid service of the subpoena along with the required witness fee. (See, e.g., *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1414 [counsel's duty of competence "includes the obligation to know ' "those plain and elementary principles of law which are commonly known by well informed attorneys," ' and also ' "to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques." ' "]; *People v. Meneses* (2008) 165 Cal.App.4th 1648, 1661 ["ignorance of the law is no excuse"].)

officer to initiate contempt proceedings by certification to the superior court. Lopez failed to demonstrate the due diligence required to obtain Deputy Jehl's attendance and may not now complain of the deputy's absence.[13] (*Nick*, *supra*, 12 Cal.App.4th at p. 1417; *Petricka*, *supra*, 89 Cal.App.4th at p. 1351.)

The cases Lopez cites do not support his position that he was denied due process. For example, Lopez relies on *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, in which the court noted, "Due process may require an agency to subpoena witnesses where, absent their testimony, the agency's ultimate decision would be based solely on their written reports." (*Id.* at p. 304.) However, the *Mohilef* court rejected the petitioners' contention they were deprived of due process, finding they received adequate notice of the proceedings and a meaningful opportunity to respond, and noting the petitioners neglected to provide information about who they wished to subpoena or what those witnesses might have said. (*Ibid.*) Similarly here, Lopez had the opportunity to subpoena Deputy Jehl to appear at his administrative hearing, but he failed to effect service of a valid subpoena with the correct witness appearance fee.

Relying on *Butera v. Apfel* (7th Cir. 1999) 173 F.3d 1049, Lopez contests the department's refusal to issue a subpoena, contending that subpoena power must be exercised by an agency where it is " 'reasonably necessary for the full presentation of a case.' " (*Id.* at p. 1057.) Lopez

_____

[13] Because the failure to properly subpoena the deputy as a witness is dispositive of Lopez's due process claim, we decline to address Lopez's additional contention that the opportunity to cross-examine the deputy was "critical to his defense." "The due process concern for cross-examination and confrontation was satisfied" by Lopez's opportunity to subpoena the deputy, even if he failed to take the steps necessary to secure the witness's attendance. (*Snelgrove*, *supra,* 194 Cal.App.3d at pp. 1371, 1375-1376.)

acknowledges the *Butera* court found no due process violation because the litigant had failed to fulfill the regulatory requirement that he demonstrate that the presence of the witness was required for a full presentation of his case.[14] Lopez attempts to differentiate himself from the litigant in *Butera*, claiming that he properly followed subpoena requirements "to the letter," but he did not. As discussed, Lopez failed to effect proper service on the deputy sheriff and failed to tender the correct witness fee. The *Butera* decision is neither binding on this court nor helpful to Lopez's position.

We also reject Lopez's additional challenges to the failure of the administrative record to include a warrant, blood test results, or body camera footage.[15] Lopez made no objection to the absence of this evidence during the administrative proceeding, nor did he file with the hearing officer a motion to compel discovery (Gov. Code, § 11507.7). Moreover, aside from sheer speculation, Lopez has not shown that any of this evidence would have benefitted him or changed the outcome of the hearing.

III.

*Substantial Evidence Supports the Trial Court Judgment*

The issues at the hearing were limited to the following: (1) whether the officer had reasonable cause to believe Lopez drove under the influence of alcohol in violation of section 23152; (2) whether Lopez was lawfully detained; (3) whether Lopez refused to submit to a chemical test after being

---

[14] In *Butera*, federal regulations not applicable here provided that the administrative law judge *may* issue a subpoena "[w]hen it is reasonably necessary for the full presentation of a case." (20 C.F.R. § 404.950(d)(1) (2020).)

[15] These documents were not sought in conjunction with Lopez's attempt to subpoena Deputy Jehl. Through the subpoena, Lopez only sought discovery of the affidavit in support of the search warrant for a blood draw.

24

requested by a peace officer; and (4) whether Lopez was admonished that his driving privilege would be suspended or revoked if he refused to submit to a chemical test.[16] (§§ 13353, subd. (d), 13557, subd. (b)(1).)

"Where an officer files a sworn statement with the [d]epartment, the officer's unsworn arrest report is admissible at the administrative per se hearing to supplement the sworn report." (*Murphey*, *supra*, 13 Cal.App.5th at p. 1063; § 13557, subd. (a) ["The department shall consider the sworn report submitted by the peace officer . . . and any other evidence accompanying the report."]; see *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 158-159 (*MacDonald*) ["[I]n an administrative hearing, '[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs . . . .' [Citation.] 'A police officer's report, even if unsworn, constitutes "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." ' ' "].)

At the administrative hearing, the hearing officer entered as evidence Deputy Jehl's arrest report and his officer's statement. Lopez raised no objections to the admission of this evidence. The superior court, like the hearing officer before it, relied on this evidence to conclude Lopez's license suspension was warranted.

"[T]he scope of our review on appeal is limited: '[W]e "need only review the record to determine whether the trial court's findings are supported by substantial evidence." [Citation.] " 'We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's

16    The attorney general contends that Lopez did not challenge the lawfulness of his arrest. However, at the hearing, Lopez clearly indicated he refused to stipulate on any of the four issues.

decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings.' " ' " (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1217, citing *Lake, supra,* 16 Cal.4th at p. 457.)

Applying this standard, we conclude the record evidence supports the trial court's determination that each contested factor was established by a preponderance of the evidence. Deputy Jehl's arrest report contained extensive evidence supporting the conclusion he had reasonable cause to believe Lopez drove under the influence of alcohol and that Lopez was lawfully detained: The arrest report recounted that Deputy Jehl arrived on the scene and was informed by radio that a man later identified as Lopez should not be permitted to drive away in his vehicle because he was "very intoxicated." Deputy Jehl saw Lopez's vehicle's headlight turn on, heard the engine start, heard the vehicle "engage the transmission," and heard and saw "the suspension 'squat.' " In the arrest report, Deputy Jehl stated that the vehicle "moved forward slightly." Deputy Jehl observed "several signs/symptoms of alcoholic beverage intoxication. [Lopez's] jaw was lax, his eyelids were droopy, his eyes were watery, and [Deputy Jehl] could smell the odor of an alcoholic beverage emitting from his breath/person." The arrest report notes that Lopez denied drinking alcohol but admitted to taking over-the-counter sleeping medication. Deputy Jehl noted he conducted field sobriety tests.

Deputy Jehl's officer's statement, signed under penalty of perjury, contained additional evidence regarding the issues of reasonable cause and lawful detention: The officer's statement indicated Deputy Jehl observed

Lopez "enter his vehicle, start the engine, and begin to move forward." Deputy Jehl observed "objective symptoms of intoxication," including "Bloodshot/watery eyes," "Odor of alcoholic beverage," "Unsteady gait," and "Slurred speech." Deputy Jehl evaluated Lopez and noted he "performed poorly."

Deputy Jehl's arrest report also evidenced Lopez's refusal to submit to a chemical test upon request and the deputy's admonishment that Lopez's driving privilege would be suspended if he refused to submit to a chemical test: Deputy Jehl stated in the arrest report that he initially asked Lopez if he would be willing to submit to a preliminary alcohol sensor device test, but Lopez declined. Then after Lopez was placed under arrest, Deputy Jehl "walked Lopez to [his] patrol vehicle and asked him which chemical test (blood/breath) he would be willing to submit to. Lopez declined to provide either." Deputy Jehl then transported Lopez to the station, again asked if Lopez would be willing to provide a breath sample or a blood sample, and Lopez responded "No, Sir," to each request. The arrest report stated that Deputy Jehl "confirmed with Lopez that he understood it was considered a refusal and Lopez stated he understood."

The officer's statement further indicated Deputy Jehl "admonished the driver" that he was required by state law to submit to a chemical test to determine the alcohol content of Lopez's blood. Deputy Jehl indicated he admonished Lopez that, because Deputy Jehl believed he was under the influence of alcohol, he had the choice of taking a breath or blood test. Deputy Jehl indicated Lopez responded, "No Sir" to a breath test, and "No Sir" to a blood test.

This evidence, which was properly admitted at the hearing and on which the hearing officer and the trial court were entitled to rely, supports

27

the trial court's determination on each of the contested issues and establishes that Lopez's license was properly suspended for refusal to consent to a chemical test. (§ 13353.) We thus reject Lopez's claims regarding the insufficiency of evidence, including his contentions that there "could not have been reasonable cause to believe he violated DUI laws because he testified [he] never started the motor or drove the truck," "there could not have been reasonable cause to believe he was intoxicated," "he never refused the [blood] test and voluntarily submitted to it as soon as Deputy Jehl asked him," and "there was no reading of any admonishment and certainly no threat of Lopez losing his license." As discussed, the deputy sheriff's written reports refute each of these contentions.

Because we have concluded the trial court's decision is supported by substantial evidence, we reject Lopez's protestations that the trial court, like the hearing officer, improperly discounted the testimony offered by Lopez and his sister.[17] The trial court acknowledged the conflicts in the evidence, recognized that the hearing officer found Lopez's testimony to be "not credible," and noted that Lopez's sister admitted she was unable to see what Lopez was doing in the truck. The trial court noted that, in light of the conflicting evidence, the hearing officer was entitled to rely on the deputy's contemporaneous written reports (*MacDonald, supra*, 32 Cal.4th at pp. 158-159; § 13557, subd. (a)) and properly concluded the weight of the evidence supported the administrative decision (*Lake, supra*, 16 Cal.4th at p. 457). There was substantial evidence supporting the trial court's ruling and our

---

[17] Lopez contends "[i]t was error for the hearing officer to rely on the police report of the absent Deputy Jehl and disregard the testimony of [Lopez] and his sister." However, as we have discussed, it was appropriate for the hearing officer to rely on the deputy sheriff's written reports.

role on appeal is not to reweigh the conflicting evidence.  (*Murphey*, *supra*, 13 Cal.App.5th at p. 1069; *Lake*, at p. 458.)

DISPOSITION

The stay issued on September 19, 2019 is dissolved.  The judgment is affirmed.


GUERRERO, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.